## DAVIS v. COLLINS.

1. EVIDENCE.—A question seeking to make a witness pass on the credibility of other witnesses, is incompetent.
2. APPEAL.—A ruling seemingly acquiesced in cannot be made the ground of an exception.

3. EVIDENCE—DISCRETION.—Admission of *de bene* evidence after proper time is discretionary with trial Judge, and under facts here there is no abuse thereof.

4. CHARGE.—It is not prejudicial error to state in a charge a fact about which there can be no reasonable difference of opinion.

5. MITIGATION OF DAMAGES—MALICE.—If a person has time to cool after a previous difficulty and renew it from a spirit of revenge, a malicious spirit, the fact that there had been a previous difficulty cannot be considered in mitigation of damages. MR. JUSTICE GARY *dissents.*

6. IBID.—IBID.—Under the facts here the instruction that, if a party attempt to strike one party in malice, but by accident strikes another, the blow as to the latter is malicious, is not erroneous. MR. JUSTICE GARY *dissents.*

Before DANTZLER, J., Spartanburg, June, 1903. Affirmed.

Action by Mabel H. Davis against J. D. Collins. From Circuit judgment, defendant appeals.

*Messrs. Evans & Frisbey* and *H. B. Carlisle,* for appellant, cite: *Non-expert witness may give an opinion after stating facts:* 19 S. C., 521; 1 McM., 56; 19 S. C., 66; 117 Mass., 122; 49 N. H., 399; 56 N. H., 227. *What must be shown to warrant vindictive damages:* 35 S. C., 489; 60 L. R. A., 406; 76 Minn., 379; Addison on Torts, 7 ed., 164; Cool. on Torts, 694; 5 C. & P., 372; 59 Ind., 130; 101 Mich., 373; Hob., 134; 3 Wend., 391; 15 La. Ann., 133; 1 Smith Lead. Ca., 549. *Previous provocations are admissible in mitigation of damages:* 2 McM., 147; 3 McC., 66.

*Messrs. Sanders & DePass* and *Stanyarne Wilson,* contra, cite: *A defendant is liable for consequences of an illegal act, although not intended:* 4 Denio, 464; 5 C. & P., 372; 110 Ill., 333; 47 Ill., 122; 62 Miss., 772; 59 Ind., 130; 66 Mo., 346; 69 Me., 163; 33 Ency., 567; Whar. Am. Crim. L., 4 ed., 965; 3 Cool. Bl. Com., 120. *Vindictive damages are punishment to wrong doer:* 2 Sedg. on Dam., 7 ed., 323; 34

S. C., 324; 65 S. C., 42. *After time to cool, previous combat is not in mitigation of damages:* 1 Spear, 388; 3 Suth. on Dam., 2 ed., sec. 1255; 1 Id., sec. 151; 46 Am. R., 342.

July 29, 1904. The first opinion was delivered by

MR. JUSTICE GARY. This is an action for damages arising out of an assault and battery upon the plaintiff by the defendant.

The alleged wrong is thus set forth in paragraph 2 of the complaint: "That on Sunday, the second day of March, 1902, in the city of Spartanburg, at the depot of the Southern Railway Company in said city, while the plaintiff was quietly and peaceably standing at or near said depot, the defendant being there for an unlawful purpose, to wit: for the purpose of committing an assault and battery of at least a high and aggravated nature upon the person of one Clifford Ghold-stein, with others aiding and abetting him in said unlawful purpose, did wilfully, wantonly, maliciously and unlawfully, while he and those who were with him were engaged in assaulting and beating, or attempting to assault and beat, the said Clifford Gholdstein, and without any cause or provocation, whatsoever, he and those who were with him aiding and abetting him in the unlawful purpose aforesaid, did strike, beat and bruise the plaintiff, Mabel H. Davis, striking her upon the head and other portions of her body, felling her to the earth, causing her to faint and become unconscious, thereby rendering her sick and shocking her nervous system, and causing her to suffer great mental and bodily pain and anguish, and preventing her from attending to her household affairs and daily duties, to her damage in the sum of $6,000."

The jury rendered a verdict in favor of the plaintiff for $1,000.

The first exception is as follows: "1. In that the Circuit Judge erred in refusing to allow the witness, Willie Brede, to answer the following questions propounded to him by defendant's counsel: 'Q. When these gentlemen swear

that the man who struck Mrs. Davis struck her with his fist, it could not have been Mr. Collins, could it?' It being error, in that the witness had previously testified that Collins was standing near him and beyond striking distance, and facts as he saw them and conclusions therefrom were competent testimony." The witness was not asked to give his opinion after stating the facts upon which it was founded, but the question necessarily required him to pass upon the credibility of other witnesses. Before stating his conclusion, it was necessary for him to determine what facts were established by the testimony of the other witnesses. The question was, therefore, incompetent.

Furthermore, after his Honor, the presiding Judge, ruled that the question was incompetent, the appellant's attorney seemingly acquiesced in the ruling by saying, "That is all right, your Honor." He also stated that the witness had answered the question.

The second exception is substantially the same as the first, and is disposed of by what was said in considering that exception.

The third exception is as follows: "3. In that the Circuit Judge erred in refusing to allow defendant's counsel to introduce and read the depositions *de bene esse* of Miss Leila Coffee, a witness examined on behalf of defendant. Defendant had closed his case, the failure to introduce the same before that time being a mere oversight of counsel. The error being an abuse of the discretion vested in the trial Judge." The record contains the following statement: "The reason given by counsel for the plaintiff for their objection to the introduction of the depositions at that stage of the case, was that the witnesses whom they had had present in Court for the purpose of meeting and contradicting that testimony had left the Court and could not again be produced, and that it would be unfair to allow the defendant to produce that testimony without an opportunity to plaintiff to reply; plaintiff having been prepared to meet it if it had been offered at the proper stage in the case."

, , This exception cannot be sustained, as the introduction of the testimony at that stage of the trial was within the discretion of the Circuit Judge, and the appellant has failed to satisfy this Court that there was an abuse of such discretion.

The fourth exception is as follows: "4. In that the Circuit Judge erred in charging the jury as follows: 'Now, shock to her nervous system—shock to one's nervous system—may result from fright, and fright may result as the case may be, that is entirely for you to say, and may have resulted from a blow.' The error being a charge upon the facts, and in violation of the Constitution." The presiding Judge did not charge the jury that the shock to the nervous system was the result of the blow in this case. It was not prejudicial error to charge that shock to the nervous system might be the result of a blow, for this is a fact as to which there is no reasonable ground for a difference of opinion.

The seventh exception is as follows: "7th. In that the Circuit Judge erred in charging the jury as follows: (8) Where there has been a combat between two persons and there has been sufficient time to cool, then the fact that there has been a previous combat is no excuse for either of the parties to renew such combat; and if there has been sufficient time to cool and one does, out of a spirit of revenge, renew the difficulty, he is just as guilty of violating the law as he would be if there had been no previous combat, and there can be no mitigation of damages. That is to say, if the person has time to cool after the difficulty, plenty of time to cool, and renew the difficulty from a spirit of revenge, with a malicious spirit, then the fact that there had been a previous difficulty cannot be considered in mitigation of damages. The error being that it excluded the right of the jury to consider any fact in mitigation of damages from considering the irritating fact of a previous combat and sudden heat and passion, in violation of the law in this State."

The charge is not in accord with the rule announced in *Dean* v. *Horton,* 2 McM., 147, in which the Court says:

"The testimony was offered in mitigation; inquiry was to be made into the motive of the defendant. The inducement to the transaction and all such particulars in the conduct of either party leading to the final act or forming part of it, as seemed to show in what degree blame attached to them severally, were calculated to aid the jury in determining the just measure of retribution and punishment. A provocation seemingly slight may have exasperated patience, if it were a repetition of an offense before often given and endured; and resentment otherwise rash or preparation otherwise ferocious, may be explained by the previous relation of the parties in former occurrences between them."

The respondent's attorneys, in their argument, thus state the questions raised by the remaining exceptions: "The jury must have clearly understood that his Honor meant to tell them that if a blow was aimed maliciously at A. and struck B., the malice was in law as personal to B. as if aimed at B., so far as concerns assailant's liability to B. The fact that he did so charge, is made the ground of several of defendant's exceptions." In other words, if the defendant with malice intended to commit an assault and battery upon Gholdstein, but unintentionally struck the plaintiff, the law imputes malice to the defendant in committing the assault and battery upon the plaintiff. There are felonies in which malice is a constituent element, and if in such cases a person attempts to commit the crime with a deadly weapon and unintentionally kills another, the law imputes malice to the perpetrator, and the killing will be murder. *State* v. *Smith,* 1 Strob., 77. So, also, when a person attempts to commit suicide with a deadly weapon, and accidentally kills another, the law presumes malice, and he is guilty of murder. *State* v. *Levelle,* 34 S. C., 120, 13 S. C., 319. This doctrine, however, is only applicable when the crime is *malum in se* and not merely *malum prohibitum. State* v. *Levelle, supra;* 1 Arch Cr. Pr. & Pl., 49. In order to convict the perpetrator when the offense is *malum prohibitum* and was committed by accident, it is necessary to show wantonness or negligence.

*State* v. *Smith,* 1 Strob., 77; 1 Arch Cr. Pr. & Pl., 923 (note).

Malice is not necessarily a constituent element of an assault and battery. The plaintiff, however, may rely upon it for the purpose of enhancing his damages, in which case it is necessary to allege and prove it. The simple fact that an assailant had malice against his intended victim, when the action is brought by another upon whom he accidentally committed an assault and battery, is not sufficient to show malice against the plaintiff. There must be evidence of facts from which malice may be implied *against the party suffering the injury;* as, for instance, where there was wantonness or negligence. In other words, there must be evidence connecting the malice intended by the assailant with the act committed; and, as we have said, this is usually done by showing wantonness or negligence. * * * It seems to me that it is an invasion of the province of the jury for the Court to assume that there was such wantonness or negligence in this case as constituted malice.

The judgment of the Circuit Court should be reversed, and the case remanded to that Court for a new trial. '

' MR. JUSTICE JONES. Some months previous to March 2, 1902, Clifford Gholdstein had a controversy with J. D. Collins, a merchant at Spartanburg, S. C., in which he inflicted a serious gunshot wound upon Collins. On March 2d, 1902, Goldstein, accompanied by his father, arrived on train at Spartanburg for the purpose of attending his trial on an indictment for the offense above stated. Collins, expecting the arrival of Gholdstein, armed himself with brass knucks, and accompanied by two of his clerks, went to the depot for the purpose of whipping Gholdstein. The day was Sunday, and there was a crowd of people about the station, and among them was plaintiff, who was there to see a friend take the train. When young Gholdstein alighted from the train, and had just spoken to the plaintiff and her friend, Collins suddenly rushed upon Gholdstein and struck at him,

one of the clerks who accompanied Collins about the same time seizing hold of Gholdstein's father. There was conflict in the testimony, but there was testimony which the jury doubtless believed, that Collins struck the plaintiff in the effort to strike Gholdstein, and thereby inflicted the injuries complained of in this action. Young Gholdstein had made no effort whatever to assault Collins, had not spoken to him, and fled through the crowd, pursued by Collins.

In reference to mitigation of damages, Judge Dantzler charged the jury that if a person has time to cool after a previous difficulty, and renew the difficulty from a spirit of revenge, a malicious spirit, the fact that there had been a previous difficulty cannot be considered in mitigation of damages. This charge is made the ground of the seventh exception. We think the charge was in accord with the law. In order to render provocation admissible in mitigation of damages, "the provocation must be shown to have been so recent and immediate as to induce a fair presumption that the violence done was committed under the immediate influence of the feelings and passions excited by it, and before the blood has time to cool." 2 Ency. Law, 2 ed., 998; *Lee* v. *Woolsey* (N. Y.), 10 Am. Dec., 230; *Bonino* v. *Caledonio* (Mass.), 11 N. E. Rep., 98; *Cummins* v. *Crawford* (Ill.), 30 Am. Rep., 558; *Kaiser* v. *Smith* (Ala.), 46 Am. Rep., 342; *Rawlings* v. *Commonwealth* (Va.), 19 Am. Dec., 758; *Jacaway* v. *Dula* (Tenn.), 27 Am. Dec., 492; *Ireland* v. *Elliott* (Iowa), 68 Am. Dec., 715; 3 Sutherland Dan., sec. 1255.

The law makes so much concession to human infirmity in succumbing to the passion engendered by *immediate* provocation, but it would be dangerous to the peace of society to go further and open the door to the consideration of every provocation, real or fancied, however remote, as a mitigating circumstance. A contrary rule would encourage men to take vengeance into their own hands and manufacture evidence of provocation in order to mitigate the penalty. It would declare that to brood over an old grudge or wrong and

thereby swell the passion for revenge, palliates a criminal assault, whereas, the good of society demands that men shall curb their passions and submit their grievances to law.

The case of *Dean* v. *Horton,* 2 McM., 147, is cited as an authority against the charge of the Court, but an examination of the point decided rather than some of the broad language used, will show that there is no conflict. The point decided in *Dean* v. *Horton* was that it is competent in an action for assault and battery to offer in evidence in mitigation of damages, provoking imputations made at times previous to the assault *of the same kind as those made which immediately lead to the assault.* This is not a departure from the general rule stated, but, at most, merely modifies it so as to allow for the immediate provocation as aggravated by its being a repetition of like provocation continued up to the time of the assault. The Court distinguished *Dean* v. *Horton* from *Avery* v. *Ray,* 1 Mass., 12, a leading case in support of the general rule stated, by pointing out that in *Avery* v. *Ray,* no provocation at all was offered on the day of the injury. In the case at bar, no provocation was offered on the day of the assault. In 3 Cyc., 1098, note 6, a modification of the general rule is allowed, "when the acts done or words spoken some time previous to the assault are parts of a series of provocations repeated and continued up to the time of the assault"—citing *Stetlaw* v. *Nellis,* 60 Barb., N. Y., 524, 42 How. Pr., 163; *Fairbanks* v. *Witter,* 18 Wis., 287, 86 Am. Dec., 765.

So as in *Rhodes* v. *Bunch,* 3 McC., 65, by way of mitigation, the motive of the trespass may be shown by evidence of facts indicating that it was done to remove a nuisance continuing up to the trespass. In that case a vagabond had obtruded himself into one of the defendant's cabins for the purpose of preying upon the neighborhood, trading with their slaves and engaging in such conduct as to become a grievous nuisance, to remove which, in the absence of the intruder, the defendant tore down the house. The inducement to the transaction in that case was immediate and the

motive one upon which the law could look with some tolera-
tion.    A very different case is presented here.    The Court
only excluded the consideration of the previous difficulty in
mitigation when there had been sufficient time to cool and
the assault was made in a spirit of revenge.

The remaining exceptions to the charge are directed to the
following instructions: "If the defendant committed the
unlawful act alleged to have been committed, if he struck
the blow alleged to have been struck, intending to
strike some one else and struck the plaintiff in this
case, he would be liable; and, if he struck the blow'
alleged to have been struck with malice towards another
person and struck the plaintiff in this case, then that would
be a malicious act.    It need not necessarily be personal to
the plaintiff.    For instance, Mr. Foreman and gentlemen,
suppose I entertained ill will towards you, and I came up and
struck you, I commit an unlawful act without provocation;
but having revenge in my heart when I struck you, if I
struck you without sufficient legal provocation, that would
be an unlawful act.    Now, if I undertook to stricke you and
did not strike you, but the gentleman on your left there, the
act would be just as unlawful as if I had struck you, every
bit.    Now, if I struck you such a blow and I entertained
malice in my heart against you, but not the gentleman on
your left there, but I endeavored to carry out my purpose as
to you and struck him, that would be a malicious act, al-
though I entertained no ill will towards him."

Considered with reference to the undisputed facts in this
case, we see no reversible error in this charge.    Let it be
remembered that the defendant, without any immediate pro-
vocation, unlawfully and in a spirit of revenge assaulted
Gholdstein with brass knucks, procured for the purpose, while
he was quietly talking to friends at a depot station crowded
with people.    With respect to Gholdstein, the assault was
made with specific malice and with respect to the bystanders
so apparently close as to be endangered by the assault, his
acts were so reckless and wanton as to imply general malice

towards the one injured, just as if one would cast a brick from a housetop into a crowded street, or fire a loaded gun into a crowded thoroughfare. The law, under such circumstances, would imply general malice, even though the offender did not have specific malice against any particular individual injured thereby. There being nothing in the case to warrant any other inference than that the act of defendant in striking plaintiff was reckless and wanton under the circumstances, from which the law would imply malice, so as to justify examplary damages in a civil action, we see no ground for reversal.

We concur in overruling the exceptions as to the admissibility of testimony for the reasons stated by Mr. Justice Gary.

The judgment of the Circuit Court is affirmed.

: MESSRS. CHIEF JUSTICE POPE *and* JUSTICE WOODS *concur in the opinion of* MR. JUSTICE JONES.