HAEHNLE BREWING CO. v. BOARD OF SUPERVISORS OF JACKSON COUNTY.

INTOXICATING LIQUORS—LOCAL OPTION—ELECTIONS— CANVASS OF VOTES—EFFECT.

Under Act No. 207, Pub. Acts of 1889, as amended by Act No. 185, Pub. Acts 1899, the determination of the board of supervisors of the vote on the question of prohibiting the manufacture and sale of intoxicating liquors within the county, in the absence of anything in the record impugning the regularity of the proceedings or the accuracy of their canvass of the votes, is final.

Mandamus by the Haehnle Brewing Company to compel the board of supervisors of Jackson county to recanvass the vote on the question of prohibiting the manu-

facture and sale of intoxicating liquor. Submitted April 26, 1909. ( Calendar No. 23,387.) Writ denied May 11, 1909.

*Wilson & Cobb*, for relator.

*Albert O. Reese*, Prosecuting Attorney (*Thomas E. Barkworth*, of counsel), for respondent.

BLAIR, C. J. The question of local option having been submitted to the electors of Jackson county at the recent annual election, and the board of supervisors having met for the purpose of canvassing the vote thereon, relator filed with said board the following protest, supported by affidavits to the truth of the material facts therein alleged, viz. :

"And now comes the Haehnle Brewing Company, a manufacturing corporation, organized and doing business under the laws of the State of Michigan, and engaged in the manufacture and sale of malt, brewed, and fermented liquors in the township of Blackman, in said county, and a taxpayer of said township, having property which is assessed for taxation, and protests against the canvass of the returns made by the board of election inspectors of the first precinct in the township of Columbia, and in the townships of Leoni, Springport, and Norvell, for the following reasons:

" (1) That in said first precinct of the township of Columbia ballot boxes were used containing no locks, and the ballots cast in said first precinct in the township of Columbia, on the question of local option, were deposited in boxes containing no lock, in violation of the statute of the State.

" (2) That the ballot boxes used in said first precinct of the township of Columbia, and in which the ballots cast on the question of local option were deposited, were opened by the inspectors of election, or some of them, during the progress of the voting, and not at an adjournment of said board.

" (3) That in said township of Leoni the ballots cast on said question of local option were not counted or canvassed by the township board of inspectors.

" (4) That in the township of Springport the voting

was carried on in an irregular and illegal manner by the chairman of the board of election inspectors in said township permitting and directing men to enter the voting booth, where electors were preparing their ballots, and prepare the ballots of such electors, without any request on the part of such electors for assistance, in consequence of which a large number of ballots were cast in the presence of persons so entering the voting booth with the elector, thereby illegally exposing the ballots of electors, and destroying the secrecy of the ballot.

" (5) There was no secrecy or attempt at secrecy in the casting of ballots in said township of Springport.

" (6) That said election in said township of Springport was unfair, in that no reasonable opportunity was given electors to cast their ballots.

" (7) That there was no canvass by the board of election inspectors of the ballots cast in said township of Springport.

" (8) That the ballot box used in the township of Norvell in which the ballots cast on the question of local option were deposited was the same box the ballots cast on the good roads proposition were deposited in, in violation of the statute of the State of Michigan.

" (9) That the undersigned, the Haehnle Brewing Company, protests against the canvass of the votes cast in the townships above mentioned, and also in the townships of Concord, Grass Lake, Hanover, Henrietta, Liberty, Napoleon, Pulaski, Rives, Sandstone, Spring Arbor, Summit, Tompkins, and Waterloo on the question of local option, for the reason that all the questions submitted to the electors at such election were not printed on one ballot, but on separate and distinct ballots, in violation of section 3657, 1 Comp. Laws."

Relator also presented to and filed with the board a petition for a recount supported by affidavits containing, among other allegations, the following:

"Your petitioner further shows that it is informed and believes that in the township of Concord 11 votes cast on said proposition were thrown out and not counted by the township board of inspectors, all or a majority of which were against the proposition of local option, and should, as your petitioner believes, have been counted and certified by said board; that in the township of Spring Arbor a large number of votes, to wit, 35, as your petitioner is

informed and believes, were cast, which contained distinguishing marks, but which were counted and certified by the board, a majority of said votes so containing distinguishing marks being in favor of local option; that in the township of Grass Lake a voter who was being instructed under the direction of the board how to prepare his ballot was importuned to vote in favor of local option, in violation of the statute, which constituted, as your petitioner is advised and believes and charges, a fraud; that in the township of Tompkins four votes cast against the proposition for local option were, as your petitioner is advised and believes, thrown out, which should have been counted and certified by the board in its return; that in the townships of Henrietta and Norvell the ballots on the amendment regarding the good roads proposition and the local option ballots were put in the same box. Your petitioner further shows that it has good reason to believe, and does believe, that errors were made in the canvass and return of the votes upon said proposition in the townships of Columbia, Concord, Grass Lake, Hanover, Henrietta, Leoni, Liberty, Napoleon, Norvell, Pulaski, Rives, Sandstone, Spring Arbor, Summit, Tompkins, and Waterloo, and that the correction of such errors will materially change the number of votes reported as cast for and against said proposition. Wherefore, this petitioner asks that said board of supervisors, constituting the board of canvassers, appoint a committee to investigate the facts set forth in this petition, and to make a recount of all the votes cast on such proposition in the townships last above mentioned, except the townships of Columbia, Leoni, Norvell, and Springport, and that, in case said board of canvassers refuses to exclude from its canvass the votes certified from the townships of Columbia, Leoni, Norvell, and Springport, then that a recount of all the votes cast in said townships of Columbia, Leoni, and Norvell be made, and that said board make correction of the mistakes and errors in said returns, and that your petitioner have such other and further relief in the premises as it may be entitled to."

The board of canvassers declined to consider either the protest or the petition for a recount, but canvassed the vote, and determined that the result of the election was in favor of prohibiting the liquor traffic within said county, adopting the resolution required by section 13 of the local

option act (Act No. 207, Pub. Acts.1889) as amended by
Act No. 183, Pub. Acts 1899.

Upon application by relator, an order to show cause was
issued, directed to respondent. The return of the respond-
ent includes the following:

"It admits that it ignored the protest and petition so
presented by said petitioner, believing that the same pre-
sented no question which the board had any right to in-
vestigate or inquire into, the same in no way impeaching
the regularity of the returns made by inspectors of election
of the various precincts in said county, canvass of which
was being made by respondent. And it further admits
that it did ascertain and determine from such returns be-
fore it that a majority of all the legal voters voting on such
proposition within said county had voted to prohibit with-
in such county the manufacture of liquors and the liquor
traffic, and that, having so determined and declared, it
did in accordance with the provisions of the statute gov-
erning such proceedings order the prohibition within the
limits of such county of the manufacture, sale, keeping
for sale, giving away or furnishing of any vinous, malt,
brewed, fermented, spirituous, or intoxicating liquors, or
any mixed liquor or beverage, any part of which is intox-
icating, and to prohibit the keeping of a saloon, or any
other place where such liquors are manufactured, sold,
given away, or stored, adopting therefor a resolution at
the same meeting of the board, which said resolution was
spread in full upon the journal of its proceedings, and set
forth in a preamble thereto the fact that said election was
duly held in the county, and that sufficient returns and
statements had been canvassed by them and the result
thereof ascertained, and that such result was in the affirm-
ative of such proposition, and that the majority in favor
thereof in said county was 64, and that the same had been
so determined and declared by respondent board, and that
all the proceedings taken by said board in the premises
were in absolute accordance with the provisions of the
law governing the same; that in such canvass by this re-
spondent each and every voting precinct of the county
had duly and properly made return in accordance with
the requirements of law, and the same had been duly ex-
amined by said board as laid before them by the county
clerk of said county, and a tabulated statement of all the

votes cast was duly made by said board and entered in full upon the journal of their proceedings for that day, and signed by the acting chairman and clerk of the board, and that the regularity of each of said returns or statements of the election inspectors of the various precincts and all thereof in said county was duly and properly determined by said board."

We are of the opinion that consideration of the questions presented by this record is foreclosed by our previous decisions.

In *Feek* v. *Bloomingdale Township Board*, 82 Mich. 393, Chief Justice CHAMPLIN, writing for the court, said:

"I do not see that the section [12] vests judicial power in the board of supervisors. The preceding section (11) makes them a canvassing board for the purpose of tabulating the votes and ascertaining and declaring the result. * * * There is no judicial action or determination, but their action under this section is wholly administrative. It is not every exercise of discretion in administrative affairs that makes such action judicial. Wherever a trust or confidence involving the exercise of discretion is reposed, it must be exercised, but, because it involves investigation, inquiry, and the exercise of discretion and choice, it is not necessarily the exercise of judicial powers. The law does not authorize them to reject any return made to them. On the contrary, they are to tabulate all the returns made."

In *Thomas* v. *Abbott*, 105 Mich. 687, it was said:

"Section 13 of the act in question provides for action by the board when the result of the county canvass shall show that a majority of the votes cast is in the affirmative. Unless we are to hold that the validity of the local option law is subject to attack by every citizen in the county in succession, and liable to be held valid one day and invalid the next, as the testimony in individual cases varies, we must conclude that the determination of the board is final. Such is the rule in county-seat cases, and this statute cited (section 13) implies as much in this case, while section 14 explicitly states that the resolution of prohibition is conclusive upon the regularity of the prior proceedings. The jurisdiction being shown by a valid record, a valid canvass, followed by the adoption of pro-

hibition, must be held conclusive upon all. *Pinkerton* v. *Staninger*, 101 Mich. 273."

In *Pinkerton* v. *Staninger*, cited in support of the court's conclusion in *Thomas* v. *Abbott*, supra, it was said:

"It has been settled by the repeated decisions of this court that the decision of the supervisors in canvassing and determining the vote upon the question of the removal of the county seat is conclusive, and that no judicial review of their action is provided by law."

In the absence of anything in the record impugning the regularity of the proceedings of the board or the accuracy of their canvass of the votes before them, their determination must be considered final, and the application for the writ of mandamus is denied, with costs to respondent.

GRANT, MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.