[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Mary Blair, has brought this action against the defendant, Herve LaFrance, alleging that he sexually molested her on several occasions prior to her sixteenth birthday. Count One of the Complaint is a cause of action for negligent infliction of emotional distress. Count Two alleges Invasion of Privacy. Count Three is a claim for intentional infliction of emotional distress and Count Four alleges assault and battery by the defendant.
During the trial both the plaintiff and the defendant testified regarding the allegations in the Complaint. The court found the plaintiff to be credible and the defendant to not be credible.
The court makes the following findings of fact by a preponderance of the evidence:
The defendant is the uncle of the plaintiff. He is married to the plaintiff's mother's sister. The plaintiff was sexually molested by the defendant when she was eight years old. He came into the room that she was sleeping in at her uncle's house and inserted his fingers and tongue in her vagina. When the defendant got up and left the room, plaintiff ran CT Page 11821 into her cousin's room and hid under his bed. Plaintiff did not tell anyone about this incident at the time of its occurrence.
When plaintiff was twelve, she was again molested by the defendant while she was sleeping in her own bed in her own home. She immediately told her mother about the incident. Her mother did not confront the defendant and did nothing to protect her daughter.
When plaintiff was fourteen, the defendant attempted to molest her during a family camping trip. On this occasion plaintiff screamed at the defendant and grabbed a knife to protect herself. She then ran and hid until other individuals came back to the camping site. This is the last reported incident of sexual misconduct by the defendant.
Plaintiff's mother passed away when plaintiff was sixteen. Plaintiff's father decided that he could not care for plaintiff and her brother. Plaintiff then moved in with her grandmother who lived in a second floor apartment above the defendant's first floor apartment. She stayed with her grandmother and on occasion with her father until she went to college.
During her first year at college, plaintiff attempted suicide by taking an overdose of aspirin. At the emergency room she told the staff that she was experiencing stress about her mother's death, her relationship with her father, her relationship with her boyfriend and school issues. She did not disclose that she had been sexually molested. Plaintiff was referred for counseling and attended eleven counseling sessions. During the last session she revealed that she had been sexually molested by her uncle.
Plaintiff did not graduate from college. Instead, she got a job as a hotel front desk clerk where she met and became involved with an abusive individual. She moved to South Carolina with this individual for less than a year and then moved back to Connecticut.
Plaintiff met her husband, Hollis, in 1992 and married him in 1993. They had a child on July 4, 1996. When plaintiff was initially involved with Hollis she did not tell him about the abuse. However, her behavior before having to go to family events with her aunts and the defendant was troubling to Hollis. She would yell at him for no reason and be extremely short tempered. She would also avoid her uncle at family gatherings. Plaintiff finally told Hollis about the molestation after a family summer party at which the defendant was present.
After the plaintiff's daughter was born, the plaintiff was extremely short tempered with her husband and her daughter. With help from her husband, she finally went to the police regarding the sexual molestation CT Page 11822 by her uncle. After she learned that she could not bring a criminal action against her uncle, she contacted an attorney who brought this civil action on her behalf. Plaintiff's counsel also referred plaintiff for several psychological evaluations with Dr. Robin Grant-Hall.
Based on the tests that Dr. Grant-Hall administered to plaintiff during the first evaluation, she testified that plaintiff was significantly depressed and in need of antidepressant medication. Plaintiff also scored very high on the Traumatic Stress Inventory which is a test developed to assess sexual and physical abuse survivors. She had a high degree of anger. She scored in the significant range for having intrusive traumatic experiences. She scored in the significant range for distress and paranoia and was extremely distrustful of people. Her anxiety and fear level were high. Plaintiff had overwhelming rage and pain and was found to be obsessive compulsive. Finally, her suicide potential was found to be moderately high. As a result of these test results, Dr. Grant-Hall referred plaintiff to a psychiatrist for counseling and antidepressant medication.
Plaintiff also has a history of recurring nightmares, sleeps in sweat pants and a sweat shirt and always sleeps away from the door and against the wall. Plaintiff describes herself as having extremely low self-esteem. She thinks that she is ugly and fat. She has a history of being bulemic. She also testified that she hates herself for what she let her uncle do.
Dr. Grant-Hall testified that plaintiff's recurring nightmares, high degree of rage, obsessive compulsive behaviors, intensity of emotional flooding and anxiety are directly attributable to the sexual abuse that she suffered as a child. She also testified that the high level of fear and distrust plaintiff suffers from are in part due to sexual abuse and in part due to the dysfunctional family situation that she grew up in.
Dr. Grant-Hall performed a second evaluation in January of 2000. She found that plaintiff's depression was still significant but had decreased slightly. Plaintiff's distrust level was still high and her post-traumatic stress disorder had increased.
Based on the multiple tests that she performed, Dr. Grant-Hall gave an expert opinion that plaintiff presented as a sexual abuse survivor.
Dr. Grant-Hall also testified that it is rare for a sexual abuse victim to ever be fully cured although there can be dramatic improvement in her functioning through therapy, medication and control of diet and exercise. Normally, a sexual abuse victim needs seven to ten years of weekly therapy at $120 per session to work through her issues and also CT Page 11823 often needs to be seen by a psychiatrist six times a year at $180 per session to monitor antidepressant medication. Plaintiff is currently taking Prozac on a daily basis. Plaintiff is now thirty years old and has a life expectancy of fifty more years.
 DISCUSSION
I. Negligent Infliction of Emotional Distress
To prevail on a claim for negligent infliction of emotional distress, the plaintiff must prove by a preponderance of the evidence that "the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress if it were caused, might result in illness or bodily harm . . . ." Morris v.Hartford Courant Co., 200 Conn. 676, 683 (1986). Plaintiff has proven by a preponderance of the evidence the elements of this cause of action. The defendant should have realized that his conduct of sexually molesting the plaintiff involved an unreasonable risk of causing emotional distress and that the distress that his acts caused, might result in illness or bodily harm.
II. Invasion of Privacy
The Connecticut Supreme Court has recognized the tort of invasion of privacy as a legitimate cause of action. Goodrich v. WaterburyRepublican-American Inc., 188 Conn. 107 (1982). In Goodrich, the court adopted the invasion of privacy definitions and categories set forth in the Restatement (Second) Torts. Id. at 128. The four categories are as follows: "(a) unreasonable intrusion upon the seclusion of another . . . (b) appropriation of the other's name or likeness . . . (c) unreasonable publicity given to the other's private life . . . (d) publicity that unreasonably places the other in false light before the public." Restatement (Second) Torts § 652A (1977).
Based on the facts alleged in the Complaint, plaintiff is seeking relief for the defendant's unreasonable intrusion upon her seclusion. An unreasonable intrusion occurs when one "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns [in a manner which is] highly offensive to a reasonable person." Restatement (Second) Torts § 652B (1977). Comments to the section of the Restatement adopted by the Supreme Court in the Goodrich case, state that "one who intentionally intrudes physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person." Restatement (Second) of Torts, § 652B (1977). CT Page 11824
The plaintiff has proven by a preponderance of the evidence the elements of this cause of action.[1] By sexually molesting plaintiff when she was eight and twelve years old, the defendant intentionally intruded physically upon her solitude or seclusion and such intrusion would be highly offensive to a reasonable person.
III. Intentional Infliction of Emotional Distress
In order to prevail on a claim for intentional infliction of emotional distress, plaintiff must establish by a preponderance of the evidence, the following four elements: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." Petyan v. Ellis, 200 Conn. 243, 253
(1986). Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. Id. At 254.
The plaintiff has proven by a preponderance of the evidence the elements of a cause of action for intentional infliction of emotional distress. By sexually molesting the plaintiff when she was eight and twelve years old, defendant engaged in conduct exceeding all bounds usually tolerated by a decent society. He knew or should have known that this conduct would result in mental distress of a very serious kind to the plaintiff. Based on the testimony of the plaintiff and Dr. Grant-Hall, plaintiff has also proven that the conduct of the defendant was the cause of the plaintiff's distress and the distress suffered was severe.
IV. Assault and Battery
"An assault has been defined as any attempt with force or violence to do corporal offense to another, coupled with the present apparent ability to complete the act A battery is a completed assault." "An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other. . . . or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." Altieri v.Colasso, 168 Conn. 329, (1975). "An actionable assault and battery may by one committed willfully or voluntarily, and therefore intentionally, or one done under circumstances showing a reckless disregard of consequences; it may also be one committed negligently." Krause v.CT Page 11825Bridgeport Hospital, 169 Conn. 1, 8 (1975).
In this case, plaintiff has proven by a preponderance of the evidence that the defendant engaged in assault and battery when he sexually molested her.
V. Damages
The court awards damages as follows:
(1) $75,200 for past, present and future economic damages.
(2) $500,000 for past, present and future non-economic damages.
(3) punitive damages based on the contingency fee agreement in the amount of $167,800.
CHASE T. ROGERS SUPERIOR COURT JUDGE